1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 EDMOND TRENT GILMORE AND<br>DANIEL GOWANS, on behalf of<br>12 themselves, all others similarly situated,<br>and the State of California<br>13 | Case No.  1:20-cv-00483-HBK<br><br>ORDER GRANTING MOTION FOR<br>APPROVAL OF PAGA SETTLEMENT[1] |

11   EDMOND TRENT GILMORE AND
     DANIEL GOWANS, on behalf of
12   themselves, all others similarly situated,
     and the State of California
13

14                    Plaintiffs,

15        v.

16   McMILLAN-HENDRYX
     INCORPORATED, dba AMERICAN
17   SEALS WEST, INC., GARY HENDRYX,
     JUSTIN HENDRYX, DEB C. HALL,
18

19                    Defendants.

20

Case No.  1:20-cv-00483-HBK

ORDER GRANTING MOTION FOR
APPROVAL OF PAGA SETTLEMENT[1]

(Doc. No.  20)

21

22        Pending before the Court is the Motion for Approval of PAGA Settlement submitted by

23   Plaintiffs Edmond Trent Gilmore and Daniel Gowans ("Plaintiffs") on December 22, 2021.  (Doc.

24   No. 20, "Motion").  Pursuant to the Court's Order (Doc. No. 21), Plaintiff filed a supplemental

25   brief and evidence on January 5, 2022 (Doc. No. 22).  No opposition was filed.

26        ///

27        ///

28   _____
     [1]  Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to magistrate judge jurisdiction.  (Doc. No. 16).

1

**BACKGROUND**

2

    **A.  Summary of the Complaint**

3       The initial complaint was filed on April 3, 2020.  (Doc. No. 1).  On June 25, 2020,

4   Plaintiffs filed a first amended complaint asserting thirteen causes of action, including one under

5   the Private Attorney General's Act ("PAGA"), California Labor Code § 2699, et seq.  (Doc. No. 6

6   at 1).  In their PAGA claim, Plaintiffs assert they were aggrieved by certain of Defendants' labor

7   and payroll practices.  (Doc. No. 6 at 32:13-18).

8

    **B.  Settlement Terms**

9       The proposed settlement includes a total payment of $44,500 by Defendants on the

10  following terms: (a) $23,001.33 to Plaintiff Edmond Trent Gilmore for settlement of his

11  individual claim; (b) $2,091.03 to Plaintiff Daniel Gowans for settlement of his individual claim;

12  (c) $18,362.12 to Mallison & Martinez as attorneys' fees and costs; and (d) $1,045.52 in PAGA

13  penalties ($784.14 to the state of California, $261.38 to the aggrieved employees).  (Doc. No. 20

14  at 2, 20-3 at 2).  The total settlement amount will be paid in three equal installments over ninety

15  days and will accrue 10% interest for non-payment.  (*Id.* at 20-3 at 2-3).

16       Plaintiffs' counsel will distribute the PAGA penalties to the government and to the

17  employees.  Counsel represents that "[i]n the event funds remain undistributed or uncashed, after

18  reasonably diligent efforts, any funds from uncashed checks will be distributed to the California

19  Unclaimed Property/Wage Fund."  (Doc. No. 20-2 at 4:2-4).

20       Under the settlement, the named Plaintiffs release any claims they have against

21  Defendants, including the PAGA claims.  (Doc. No. 20-2 at 3 ¶ 4).  No other claims are released.

22  (*See id.*).  Plaintiffs' counsel represents that the settlement "clearly leaves individuals

23  unhampered to pursue their own individual wage claims under *Arias*.[2]  Any monies received by

24  employees is an additional amount to these claims and these payments may encourage individual

25  employees to pursue such claims."  (Doc. No. 20-1 at 4:17-20).

26       No injunctive relief or other non-monetary relief is included in the settlement.  (*See id.*).

27

28     [2] This is an apparent reference to *Arias v. Sup. Ct.*, 46 Cal. 5th 969 (2009).

1          **APPLICABLE LAW**

2     **A.  Standard of Review of PAGA Settlements**

3          "'A PAGA representative action is . . . a type of qui tam action' in which a private

4     plaintiff pursues 'a dispute between an employer and the state Labor and Workforce Development

5     Agency' ('LWDA') on behalf of the state." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp.

6     3d 959, 971 (N.D. Cal. 2019) (quoting *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 382,

7     384 (2014)).  Although such actions do not require class certification, the Court must review and

8     approve the settlement of an action filed pursuant to the PAGA.  *Id.*; Cal. Lab. Code § 2699(*l*)(2).

9          Courts consider: (1) whether the statutory requirements of notice to the LDWA have been

10    satisfied, and (2) whether the settlement agreement is fair, reasonable, and adequate, as well as

11    meaningful and consistent with PAGA's public policy goals, which include "augmenting the

12    state's enforcement capabilities, encouraging compliance with Labor Code provisions, and

13    deterring noncompliance." *Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, *15 (N.D. Cal.

14    Dec. 8, 2021); *Perez v. All Ag, Inc.*, 2021 WL 3129602, *4 (E.D. Cal. July 23, 2021); *see Moniz*,

15    72 Cal. App. 5th at 64, 77 ("we also agree with the LWDA and federal district courts that have

16    found it appropriate to review a PAGA settlement to ascertain whether a settlement is fair in view

17    of PAGA's purposes and policies") (citing cases).  Accordingly, many of the same considerations

18    relevant to review of class action settlements are relevant here:

19            Thus, while PAGA does not require the trial court to act as a fiduciary
20            for aggrieved employees, adoption of a standard of review for
              settlements that prevents 'fraud, collusion or unfairness,' and
21            protects the interests of the public and the LWDA in the enforcement
              of state labor laws is warranted.  Because many of the factors used to
22            evaluate class action settlements bear on a settlement's fairness—
              including the strength of the plaintiff's case, the risk, the stage of the
23            proceeding, the complexity and likely duration of further litigation,
              and the settlement amount—these factors can be useful in evaluating
24            the fairness of a PAGA settlement.

25

26    *Moniz v Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021) (internal quotation marks and citation

27    omitted).

28

                                                3

1

**B.  Evaluation of PAGA Penalty Settlement**

2          When evaluating the fairness, adequacy, and reasonableness of a PAGA penalty, courts

3  compare the potential penalty amount (its verdict value, as some courts refer to it) with the actual

4  recovery under the settlement.  *See Haralson*, 383 F. Supp. 3d at 972-74; *see also Moniz*, 72 Cal.

5  App. 5th at 87 ("In estimating the potential recovery in the case to evaluate the fairness of the

6  settlement, the trial court assumed one violation [] per employee").  There is no express or even

7  baseline percentage of recovery required.  Under the express terms of the PAGA, a verdict value

8  is not guaranteed even if the plaintiff prevails, as courts have discretion to lower the amount of

9  penalties based on the circumstances of a particular case.  Cal. Lab. Code § 2699(e)(2); *see also*

10  *Haralson*, 383 F. Supp. 3d at 973-74 (courts evaluating settlements may consider likelihood of

11  exercising discretion to discount claims).

12          As such, courts have approved settlements across of range of verdict value percentages.

13  *See Perez v. All Ag, Inc.*, 2021 WL 3129602, *4 (49% of verdict value of PAGA penalty); *Decker*

14  *v. AllStates Consulting Services, LLC*, 2020 WL 7769842, *3 (E.D. Cal. Dec. 30, 2020) (42% of

15  verdict value of PAGA penalty, resulting in average payment per employee of $188); *Hartley v.*

16  *On My Own, Inc.*, 2020 WL 5017608, * 4 (E.D. Cal. Aug. 25, 2020) (approving settlement at

17  3.47% of verdict value of PAGA penalty, resulting in average payment per employee of $61); *see*

18  *Haralson*, 383 F. Supp. 3d at 972-74 (citing cases reflecting approval of settlements at 0.2% to

19  1.1% of verdict value of PAGA penalty).  And courts have rejected settlements where the PAGA

20  penalty discount was too great.  *O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d

21  1110,1133-1134 (N.D. Cal. 2016) (declining to approve proposed settlement of penalties at 0.1%

22  of verdict value); *see also Haralson*, 383 F. Supp. 3d at 972-74 (requesting more information

23  regarding proposed settlement of penalties at less than 1% of verdict value).

24          Critical to the analysis is whether the plaintiff provides a reasonable explanation for the

25  settlement amount.  *Compare Ramirez v. Benito Valley Farms, LLC*, 2017 WL 3670794, *4 (N.D.

26  Cal. Aug. 25, 2017) (considering early stage of litigation, defendant's weak financial condition,

27  and injunctive relief provided by settlement, approving PAGA settlement of 4.5% of verdict

28  value) with *Smith v. Grundfos Pumps Manufacturing Corp.*, 2021 WL 5298863, *12-13 (E.D.

1   Cal. Nov. 15, 2021) (plaintiff failed to show why significant PAGA penalty reduction at

2   settlement was appropriate).

3          Some courts evaluate fairness based on a comparison of the amount of PAGA penalties to

4   the overall settlement.  In this analysis too, wide variability exists.  *E.g., Newell v. Ensign United*

5   *States Drilling (Cal.) Inc.*, 2021 WL 6000227, *14 (E.D. Cal. Dec. 20, 2021) (approving

6   settlement where PAGA penalties were 4% of gross settlement amount); *see Haralson*, 383 F.

7   Supp. 3d at 972-74 (discussing cases approving settlements where PAGA penalty accounted for

8   1% to 2.4% of gross settlement amount).

9          **C.  Attorney's Fees**

10          Reasonable fees and costs are awarded in a PAGA action, Cal. Lab. Code § 2699(g)(1),

11   and "[p]art of the court's role in determining whether a PAGA settlement is reasonable involves

12   determining whether the amount of attorneys' fees is proper."  *Decker v. AllStates Consulting*

13   *Servs., LLC*, No. 2:18-CV-03216-KJM-DB, 2020 WL 7769842, at *4 (E.D. Cal. Dec. 30, 2020).

14   Factors such as the novelty of the claims, the attorney's fees lodestar, and the amount and

15   complexity of legal work required may be relevant to evaluating an attorney's fees amount.  *See*

16   *Hamilton v. Juul Labs, Inc.*, 2021 WL 5331451, *12-13 (N.D. Cal. 2021) (considering novelty of

17   PAGA claims); *Patel v. Nike Retail Services, Inc.*, 2019 WL 2029061, * 4 (N.D. Cal. May 8,

18   2019) (considering that litigation included substantial discovery, motion practice, and mediation

19   efforts over five years).  Counsel should provide the court with information about the scope of

20   their work on the PAGA claims.  *See Decker,* 2020 WL 7769842, at *4 (fee award of one-third

21   approved where counsel provided lodestar based on time spent on PAGA claims).

22                                           **ANALYSIS**

23          **A.  Satisfaction of Statutory Notice Requirements**

24          The PAGA requires that any proposed settlement be submitted to the LWDA at the same

25   time it is submitted to the court for approval.  Cal. Lab. Code § 2699(*l*)(2).  Plaintiff has satisfied

26   this requirement.  (Doc. No. 20-2, 20-4).

27          ///

28          ///

**B.   Fairness, Adequacy, and Reasonable of the Settlement**

Pursuant to the PAGA, 75% of civil PAGA penalties are paid to the LWDA and 25% are paid to the PAGA employees.  Cal. Lab. Code § 2699(i).  The settlement complies with this requirement.  (Doc. No. 20-3 at 2 ¶ 1.3).

Next, the Court considers whether the settlement of the PAGA claim is fair, adequate and reasonable, as well as meaningful and consistent with the purposes of the PAGA.  *Moniz*, 72 Cal. App. 5th at 77.  Despite the Court's concerns regarding Plaintiffs' minimal transparency regarding the value of the PAGA claim, the proceedings in this action, and the attorney's fees attributable to the PAGA claim, the Court finds the relevant factors weigh in favor of approval.

**1.   Strength of Plaintiff's Case/ Risk and Cost of Further Litigation**

Counsel's evaluation of the strengths of Plaintiff's case and risks of continued litigation is often helpful to a court evaluating the fairness of a settlement.  Here, however, Plaintiffs' counsel includes no information about their experience with PAGA actions.  On this point, their memorandum refers to paragraphs 12-14 of counsel's declaration (Doc. No. 10 at 6:25-26), but these paragraphs identify the exhibits attached to the declaration and do not describe counsel's experience.  (Doc. No. 20-1 at 5 ¶¶ 12-14).  In any event, in their initial motion, Plaintiffs do not discuss the strength of the PAGA claim other than to represent that an "intervening" change in law lowered Plaintiff's valuation of the case.  (Doc. Nos. 20 at 7:3-5, 20-1 at 4 ¶ 9).  The law cited, *ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 193 (2019), was obviously issued prior to the filing of this case on April 3, 2020.

In their supplemental briefing, Plaintiffs estimate that using "liberal assumptions as to the extent and frequency of violations," Defendants' maximum PAGA exposure was approximately $25,000.  (Doc. No. 22-1 at 2:23).  Plaintiffs indicate that given this relatively low amount and the few aggrieved employees, as well as the limitations of Defendants' recordkeeping, continued litigation of the PAGA claims was not warranted.  (*Id.* at 3:3-5).  These calculations and analysis leave extensive room for further explanation.  However, the Court recognizes the inherent risks and costs in any litigation matter, and that the award of PAGA penalties is discretionary under Labor Code § 2699(e) and finds that this factor generally weighs in favor of settlement.

**2.  Stage of the Proceeding**

In their Joint Status Report of January 7, 2021, submitted about nine months after the case was filed, the parties represented that they had a "discussion" of Rule 26 initial disclosures—indicating that those disclosures had yet been exchanged nor discovery commenced.  (Doc. No. 13 at 6:24).  In the pending motion, Plaintiffs represent that by the time of settlement, around August 2021, they had engaged in formal and informal discovery; however, they provide no detail on the scope of such efforts.  (Doc. Nos. 20 at 4:7; 20-1 at 2 ¶ 6).  This representation is somewhat bolstered by the parties' Joint Statement of August 11, 2021, in which they represent that Plaintiffs "served Defendants with their Requests for Production of Documents, Electronic Information and Tangible Things, Set One, Special Interrogatories, Set One, and General and Employment Form Interrogatories, Set One."[3]  However, the parties state that Defendants served responses to this discovery on August 28, 2020—well before the January 7, 2021 Joint Status Report in which they represented they had yet to even exchange initial disclosures.  (Doc. No. 18 at 2 ¶¶ 1-2).  Plaintiffs' supplemental evidence indicates that they have engaged in informal, if somewhat incomplete, discovery relating to the number of pay periods potentially at issue.  (Doc. No. 22-2 at 2:12-20).  They also note that part of the challenge of this case arises from Defendants' failure to maintain proper records.  (*Id.*).  Thus, the record on the discovery conducted in this case is, at best, muddled.

There has been no motion practice—not on the FLSA collective action claim, the PAGA claim, or the Plaintiffs' individual claims.  (*See* docket).  The parties appear to have engaged in informal settlement negotiations.  (Doc. No. 20 at 4:10-11).  Given the foregoing, this factor is neutral.

**3.  Amount of PAGA Penalties**

The PAGA penalties of $1,045.52, with $261.38 going to the employees, is quite low in the abstract.  With just seven employees included (Doc. No. 20-1 at 2-3 ¶ 5), this amounts to an average of $37.34 per employee.  The penalties amount to approximately 4.2% of the maximum

---

[3] The Court notes that "General and Employment Form Interrogatories" are forms created by the California Judicial Council for use in California state court.

penalties calculated by Plaintiffs and 2.3% of the total settlement amount.  These are not outside

those approved in other actions.  *See, e.g., Hartley*, 2020 WL 5017608.  Additionally, the LWDA

has not objected to the settlement.  (*See* docket).  Therefore, the amount is not unreasonable and

weighs in favor of settlement.

### 4.   Allocation and Distribution of Penalties

The PAGA penalties will be distributed to employees on a pro-rata basis "based upon the

number of pay periods worked during the relevant time period."  (Doc. No. 20 at 8:1).  Because

of the limited number of employees, Plaintiffs' counsel will make the calculations and distribute

the awards, eliminating the need for a settlement administrator.  (Doc. No. 20-1 at 3-4 ¶ 8).  This

allocation and distribution method is fair and reasonable, and weighs in favor of approval of the

PAGA settlement.

### C.  Reasonable Attorney's Fees

Because the Court is only required to approve the PAGA penalty, not the individual

settlements, the relevant portion of the attorney's fees are those related to the PAGA claim.

Plaintiffs' counsel failed to identify the portion of the PAGA settlement allocated to fees and, in

providing a lodestar amount, failed distinguish between the amount of time spent on the PAGA

claim and the time spent on individual claims.  Still, because the amount counsel will receive in

the settlement is less than a quarter of their lodestar, even if only a few hours of time are allocated

to the PAGA claim, the fee request is reasonable.

///

### CONCLUSION

Accordingly, it is **ORDERED**:

(1) Plaintiffs' Motion for Approval of PAGA Settlement (Doc. No. 20) is GRANTED.

(2) Plaintiffs shall file a declaration providing notice of the PAGA penalty payments

   made pursuant to Paragraph 1.3 of the Settlement Agreement (Doc. No. 20-3 at 2)

   within 45 days of the date of this Order.

1    (3) If Plaintiffs fail to file either a Rule 41(a)(1)(A)(ii) dismissal or a notice of

2    noncompliance with the settlement within 105 days after the date of this Order (*see*

3    Doc. No. 20-3 at 3 ¶ 3), the Court will dismiss this action with prejudice.

4

5    Dated:    January 20, 2022

6                                                 HELENA M. BARCH-KUCHTA
                                                  UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28